

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. NORWOOD,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No.: 3:18-cv-00201-GPC (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 11, 17)** |

This Report and Recommendation is submitted to the Honorable Gonzalo P. Curiel, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On January 29, 2018, plaintiff William J. Norwood filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that

---

[1] Nancy A. Berryhill is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).

plaintiff's motion for summary judgment be **DENIED,** that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## PROCEDURAL BACKGROUND

On March 26, 2013, plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning May 17, 2005. (Certified Administrative Record ["AR"] 183-88.) After his application was denied initially and upon reconsideration (AR 114-17, 122-26), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 131.) An administrative hearing was held on September 15, 2016. Plaintiff appeared at the hearing with counsel, and testimony was taken from him, as well as telephonically from a medical expert ("ME") and a vocational expert ("VE"). (AR 33-76.)

As reflected in his May 3, 2017 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, since March 26, 2013, the date his application was filed. (AR 16-24.)

The ALJ's decision became the final decision of the Commissioner on December 27, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 26, 2013, the application date.[2] (AR 18.)

//

---

[2] SSI is not payable prior to the month following the month in which the application is filed. *See* 20 C.F.R. § 416.335.

2

3:18-cv-00201-GPC (RNB)

At step two, the ALJ found that plaintiff had the following severe impairments: osteoarthritis of the right ankle; osteoarthritis of the right knee; and morbid obesity. (AR 14.) The ALJ further found that plaintiff's medically determinable mental impairments of depression, anxiety, and post-traumatic stress disorder, considered singly and in combination, did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities and were therefore nonsevere. (*Id.* at 19.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 19.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 416.967(b), such that

> "he can lift and carry 20 pounds occasionally and 10 pounds frequently; and can stand and/or walk for 4 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, with normal breaks; can occasionally perform postural activities including balancing, stooping, kneeling, crouching, and crawling, but with no climbing ramps and stairs, and no climbing ladders, ropes, or scaffolds; and must avoid concentrated exposure to workplace hazards (such as dangerous machinery and unprotected heights)." (AR 20.)

At step four, the ALJ determined that plaintiff had no past relevant work. (AR 22.) The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC could perform the requirements of jobs that existed in significant numbers in the national economy (*i.e.*, information clerk; order caller; and packer), the ALJ found that plaintiff was not disabled. (*Id.* at 23.)

## PLAINTIFF'S CLAIMS OF ERROR

1. The ALJ failed to properly consider the severity of plaintiff's mental impairments at step two of the sequential evaluation process. (*See* ECF No. 11 at 8-10.)

2. The ALJ failed to properly consider the opinions of plaintiff's treating physicians and the State agency physicians. (*See* ECF No. 11 at 10-13.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

**A.** **Reversal is not warranted based on the ALJ's alleged failure to properly consider the severity of plaintiff's mental impairments at step two.**

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. § 416.920(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not **significantly** limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c) (emphasis added). Basic work activities are "abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting,

4

pushing, pulling, reaching, carrying, or handling." Basic work activities also include mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* Social Security Ruling ("SSR") 85-28.[1] The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

In order to determine whether a claimant has a severe *mental* impairment at step two, an ALJ must follow a "special psychiatric review technique." *See* 20 C.F.R. § 416.920a(a).[3] This entails the following steps: "determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s) (in part based on the degree of functional limitation); and then, if any of the mental impairments is severe, proceeding to step three of the sequential evaluation process." *See* 20 C.F.R. § 416.920a(b)-(d); *see also Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).

Pursuant to the Commissioner's regulations in effect at the time of the ALJ's decision here, the four broad functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See* 20 C.F.R. § 416.920a(c)(3). In rating the degree of limitation in these

---

[1] Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

[3] As noted by the Commissioner (*see* ECF No. 17-1 at 10 n.5), the Social Security Agency revised the medical criteria used to evaluate claims involving mental disorders in a revised version of 20 C.F.R. § 416.920a effective January 17, 2017. The revised version applies to ALJ decisions issued after that date. *See* 81 Fed. Reg. 66138-01, at 66138 n.1 (Sept. 26, 2016). Since the ALJ decision here was issued on May 3, 2017, all references herein to 20 C.F.R. § 416.920a will refer to the revised version.

areas, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 416.920a(c)(4). Under the Commissioner's regulations, if the degrees of limitation are rated as "none" or mild", the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. § 416.920a(d)(1).

Here, the ALJ's decision reflects that he followed the "special psychiatric review technique." First, consistent with the diagnoses reflected in plaintiff's treatment records from Family Health Centers of San Diego ("FHC") and in the psychiatric examination report of Dr. Glassman (a consultative examiner), the ALJ accepted that plaintiff had medically determinable mental impairments of depression, anxiety, and post-traumatic stress disorder. (*See* AR 19.) Noting that there was little evidence in the file showing more significant limitations than what Dr. Glassman had noted in her examination, the ALJ found that plaintiff had no more than mild limitation in each of the four broad functional areas. (*Id.*) In accordance with the Commissioner's regulations, the ALJ therefore concluded therefore that plaintiff's medically determinable mental impairments were non-severe. (*Id.*)

On the assessment form accompanying her examination report, Dr. Glassman had opined that plaintiff had "no major mental status abnormalities" and that plaintiff's degree of limitation in all the functional areas considered was either "none" or "mild." (*See* AR 756-58.) In her narrative examination report, Dr. Glassman had opined that plaintiff "showed no major mental status abnormalities during the assessment"; that "he is capable of behaving in a socially-appropriate manner and of getting along adequately with others"; that "[h]e is capable of understanding and following at least simple instructions"; and that "[h]e has mild limitation in his capacity to maintain concentration, persistence, and pace, and to adapt to changes and stresses in a workplace setting." (AR 762-63.) She also had assessed plaintiff's current Global Assessment of Functioning ("GAF") score at 65 (AR 763), which is indicative of "[s]ome mild symptoms (*e.g., depressed mood and mild insomnia* ) OR some difficulty in social, occupational, or school functioning (*e.g.,*

*occasional truancy, or theft within household* ), but generally functioning pretty well, has some meaningful interpersonal relationships." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed.).

Thus, Dr. Glassman's opinions did not support a finding by the ALJ that plaintiff's medically determinable mental impairments were severe. In challenging the ALJ's nonseverity determination, plaintiff also points to the FHC records and to plaintiff's hearing testimony regarding his work record. (*See* ECF No. 11 at 12 (citing AR 748-52).) However, the FHC records merely evidence that plaintiff sought treatment there from a licensed clinical social worker on four occasions during which he complained of depression, anxiety, and nightmares. (*See* AR 675-76, 677-81, 746-47, 748-52.) Those records are devoid of any opinion evidence regarding plaintiff's degree of limitation in any of the four broad functional areas. Likewise, the FHC records are devoid of any opinion evidence regarding any specific functional limitations attributable to plaintiff's mental impairments. Moreover, while the social worker at FHC observed a flat effect, depressed/anxious mood, and soft speech, she also observed that plaintiff was alert, oriented, and cooperative, that he had had normal thought processes and memory, and that he exhibited appropriate judgment and insight. (AR 750-51.)

The mere presence of mental impairments did not establish that those impairments were "severe" impairments. *See, e.g., Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of disability."); *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) (at step two, ALJ did not err by failing to classify carpal tunnel syndrome as a severe impairment where "the medical record does not establish any work-related limitations as a result of this impairment"); *Mahan v. Colvin,* 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) (step two determination was not

7

erroneous where the "medical records regarding Plaintiff's sleep apnea provided diagnoses and results; they did not state any specific limitations.").

Finally, in plaintiff's hearing testimony regarding his work record, plaintiff never attributed his inability to hold a job for longer than four or five months to his mental impairment(s). (*See* AR 39-46.) And, when specifically asked by his own attorney why he could not work, plaintiff cited the pain and physical limitations caused by his physical impairments without mentioning any limitations caused by his mental impairments. (*See id.* at 60.) The Court concurs with the Commissioner that plaintiff's lack of work history in no way supports the existence of significant limitations in his mental ability to do basic work activities.

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider the severity of plaintiff's mental impairments at step two.

**B.** **Reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of plaintiff's treating physicians and the State agency physicians.**

In his summary judgment motion, after citing the Ninth Circuit standard for the evaluation of medical opinion evidence, plaintiff contends that the ALJ failed to properly consider the opinions of his treating physician at FHC. (*See* ECF No. 11 at 13-15 (citing AR 748-52).)[4] However, as the Commissioner points out in her cross-motion, the FHC records identified by plaintiff are those of social worker Ishida, who was not a physician

---

[4] Although the heading to the section of his summary judgment motion related to his second claim of error refers to plaintiff's treating physicians in the plural, plaintiff does not specify or discuss any other treating physician opinions that the ALJ allegedly failed to properly consider. Nor does plaintiff specify or discuss any examining physician opinions that the ALJ allegedly failed to properly consider. The Court therefore will confine the first part of this analysis of plaintiff's second claim of error to plaintiff's contention that the ALJ failed to properly consider the opinions of his treating physician at FHC.

and whose opinions were not subject to the Ninth Circuit standard cited by plaintiff. *See* 20 C.F.R. §§ 416.902, 416.913(a) & (d).[5]

Further, as the Commissioner also points out, the FHC records identified by plaintiff merely reflect plaintiff's complaints to the social worker, the results of a mental status examination (which yielded unremarkable results), and a diagnosis. The records do not contain any medical opinions, as they do not reflect judgments about the nature or severity of plaintiff's impairments, or indicate what plaintiff can still do despite his impairments, or specify any mental restrictions. *See* 20 C.F.R. § 416.927(a)(1).

Moreover, in his memorandum in opposition to the Commissioner's cross-motion, in the part related to his second claim of error, plaintiff has not responded to any of the Commissioner's contentions regarding the ALJ's alleged failure to properly consider the opinions of plaintiff's treating physician at FHC. Rather, plaintiff has confined his opposition to the ALJ's alleged failure to properly consider the opinions of the State agency physicians. (*See* ECF No. 21 at 4-5.) The Court deems plaintiff's failure to respond to the Commissioner's contentions with respect to the first part of plaintiff's second claim of error as a concession to the correctness of the Commissioner's position.

As to plaintiff's contention that the ALJ failed to properly consider the opinions of the State agency physicians that plaintiff was limited to "sedentary" work (*see* ECF No. 11 at 14; *see also* ECF No. 21 at 4-5), the Court concurs with the Commissioner that plaintiff has misattributed statements by the State agency disability examiners to the two State agency physicians. The opinions of the two State agency physicians, Dr. Ross and Dr. Schnute, are reflected in the administrative record at AR 89-99 and AR 103-11, above their respective signature lines on AR 99 and AR 111. Neither of those physicians opined that plaintiff was limited to sedentary work. Rather, Dr. Ross opined that plaintiff could

---

[5] As noted by the Commissioner (*see* ECF No. 17-1, at n.13), the relevant versions of 20 C.F.R. §§ 416.902 and 416.913 are the versions in effect at the time of plaintiff's SSI application. *See* 82 Fed. Reg. 5844, 5862 (Jan. 18, 2017).

lift/carry 20 pounds occasionally and 10 pounds frequently, and could stand/walk for 4 hours and sit for 6 hours in an 8-hour workday. (AR 97.) Similarly, Dr. Schnute found the same lifting/carrying and sitting restrictions as Dr. Ross, but opined that plaintiff could stand/walk for 6 hours in an 8-hour workday. (AR 109.) These limitations are consistent with light work, and far greater than sedentary work. *See* 20 C.F.R. §§ 416.967(a), (b); SSR 83-10, available at 1983 WL 31251, at *5 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday . . .").

The pages in the administrative record cited by plaintiff containing the statements limiting plaintiff to sedentary work (AR 100, 111) followed the medical portion of the Disability Determination Explanation ("DDE") form containing the opinions of the two State agency physicians, Dr. Ross and Dr. Schnute, who were responsible for the medical portion of the determination. *See* Program Operations Manual System ("POMS")[6] DI 24501.001.B.3.b, B.3.d, B.4, C.1-C.2; *see also* 20 C.F.R. § 416.927(e)(1). The statements limiting plaintiff to sedentary work are attributable to the two State agency disability examiners, Mr. Bourche and Mr. Barreca, who were responsible for the assessment of vocational issues in the case. *See* POMS DI 24501.001.B.1.c; POMS DI 25003.001.C.1. Plaintiff has failed to convince the Court otherwise.

In his decision, the ALJ explained the extent to which he relied on and/or discounted the opinions of Dr. Ross and Dr. Schnute and his reasons for doing so. (*See* AR 21-22.) The ALJ noted that Dr. Ross and the ME shared the same opinions that plaintiff had the capacity for light lifting and carrying, but also was limited to standing and walking only 4 hours in a normal workday; and that Dr. Schnute and Dr. Sabourin, an orthopedic

---

[6] POMS is a policy manual that does not have the force and effect of law, but nonetheless is persuasive authority. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006); *Hermes v. Sec'y of Health & Human Servs.*, 926 F.2d 789, 791 n.1 (9th Cir. 1991).

consultative examiner, shared the same opinions that plaintiff had the capacity for light work and was capable of standing and walking up to 6 hours in a normal workday. (*Id.* at 22.) The ALJ stated that he was giving "more weight" to the opinions of Dr. Ross and the ME because they "recognized the need for additional standing and walking restrictions" and the ALJ believed that plaintiff "would be better served by limiting his standing and walking to only 4 hours in a normal workday as he has problems with two joints in his right leg." (*Id.*) Thus, while the opinions from Dr. Schnute and Dr. Sabourin were also "generally supportive of the capacity for a range of light work," the ALJ was only giving "partial weight" to their opinions. (*Id.*)

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of the State agency physicians.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See* Fed. R. Civ. P. 72(b)(2). *See id.*

IT IS SO ORDERED.

Dated: October 17, 2018

ROBERT N. BLOCK
United States Magistrate Judge