UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM J. NORWOOD,

                                        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security[1],

                                        Defendant.

Case No.: 3:18-cv-00201-GPC (RNB)

**ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff William J. Norwood ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act") seeking judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Defendant" or "Commission"), which denied Plaintiff's application for supplemental security income ("SSI"). (See ECF No. 1[2] (Compl.).) The parties have filed cross-motions for summary judgment. (See ECF No. 11 (Plaintiff's motion); ECF No. 17 (Defendant's motion).) On October 17, 2018, Magistrate Judge Robert N. Block issued a report and recommendation ("Report") recommending that Plaintiff's motion for summary judgment be denied and that Defendant's cross-motion for summary judgment

---

[1]     Nancy A. Berryhill is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).
[2]     ECF page numbers are based on CM/ECF pagination.

1

be granted. (ECF No. 24.) No objections were filed. After careful consideration of the pleadings and supporting documents, the Court **ADOPTS** the Magistrate Judge's Report and **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.

## FACTUAL BACKGROUND

After cross-referencing the administrative record, the Court recites the facts as substantially presented in the Report. (ECF No. 24, at 2.)

Plaintiff alleges his disability began in 2005, when at 27 years old, he suffered from a gunshot wound to his back. (Certified Administrative Record ["AR"] 110, 183.) In May 2011, a consultative orthopedic examination showed Plaintiff to be 71 inches tall, and weigh 340 pounds. (ECF. No. 11, at 3.) During that same examination, the examining physician diagnosed Plaintiff as having chronic thoracic and lumbar strain and sprain, right ankle fusion, and early degenerative joint disease. (Id.) Between 2013 and 2016, Plaintiff was seen by a number of physicians for both physical and mental complaints. (Id.) Plaintiff's physical complaints included morbid obesity, chronic back pain, and degenerative changes in Plaintiff's right knee and right ankle. (Id. at 4.) Plaintiff's mental complaints included symptoms of PTSD, depression, anxiety, and difficulty sleeping. (Id.)

Plaintiff's medical records from Family Health Centers of San Diego ("FHC") and Plaintiff's consultative psychiatrist, Dr. Glassman, both indicated that Plaintiff had medically-determinable mental impairments of depression, anxiety, and post-traumatic stress disorder. (See AR 19.) In particular, the FHC records include the opinions of social worker Yo Ishida, and reflect Plaintiff's complaints recorded during a mental examination. (See ECF No. 22, at 9.)

Three other physicians, Dr. Ross, Dr. Schnute, and Dr. Sabourin, alongside Plaintiff's own Medical Examiner, also examined Plaintiff. (See ECF No. 21, at 4-5; AR 33-76.) Dr. Ross's report indicated that Plaintiff could lift/carry 20 pounds occasionally, carry 10 pounds frequently, and could stand/walk for 4 hours and sit for 6 hours in an 8-

2

hour workday. (AR 97.) Similarly, Dr. Schnute found the same lifting, carrying, and sitting restriction, but indicated that Plaintiff could stand/walk for 6 hours in an 8-hour workday. (AR 109.) Both Dr. Ross and the Medical Examiner shared the same opinion that Plaintiff had the capacity for light lifting and carrying, but was limited to standing and walking only four hours in a normal workday. (Id.) Both of the orthopedic consultative examiners, Dr. Schnute and Dr. Sabourin, shared the opinion that Plaintiff had the capacity for light work. (Id.)

## PROCEDURAL BACKGROUND

On March 26, 2013, Plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning May 17, 2005. (AR 183-88.) After his application was initially denied and upon reconsideration (AR 114-17, 122-26), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 131.) On May 3, 2017, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act since March 26, 2013, the date his application was filed. (AR 16-24). The ALJ's decision became the final decision of the Commission on December 27, 2017, when the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

On October 17, 2018, Magistrate Judge Robert N. Block issued a Report recommending Plaintiff's motion for summary judgment be denied and Defendant's cross-motion for summary judgment be granted. (ECF No. 24.) No objections to the Report have been filed by either party by the October 31, 2018 deadline. In reviewing these motions, the Magistrate Judge followed both the ALJ and the Commissioner's five-step sequential evaluation process. (See 20 C.F.R. § 416.920.) This five-step sequential process is used to determine whether a plaintiff is disabled. (See 20 C.F.R. §§ 404.1520, 416.920.) In steps one through four, the burden is on the claimant to demonstrate a severe impairment and an inability to perform past work. At step five, if there has not yet been a determination, the burden shifts to the Commissioner to demonstrate the claimant is not disabled. (See also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir.

2009).)

Both of the issues brought by Plaintiff on appeal are geared toward the second step of the five-step sequential process. The second step, "the severity step," weeds out claimants with minor problems, making them ineligible for disability benefits. (See Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims.").) Claimants must have a severe impairment, or combination of impairments, which significantly limits their physical or mental ability to do basic work activities or else they will be found not disabled. (See 20 C.F.R. §§ 404.1520(c), 416.920(c).) If the impairment is severe, the ALJ then proceeds to step three. However, a claimant's impairment, or combination of impairments, is not severe if it does not significantly limit his or her physical or mental ability to do basic work activities. Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, and lifting. (See 20 C.F.R. § 404.1522.) To satisfy step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. (See 20 C.F.R. §§ 404.1508, 416.908.)

## STANDARD OF REVIEW

The district court's duties in connection with a Report of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of a Report to which neither party objects. See Wang v. Masaitis, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); U.S. v. Reyna-Tapia, 328 F.3d 114, 1121-22 (9th Cir. 2003) (*en banc*). When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. Campbell v. United States Dist. Court, 501, F.2d 196, 206 (9th Cir.

4

1974); <u>Johnson v. Nelson</u>, 142 F. Supp. 2d 1215 (S.D. Cal. 2001).

Because no objections have been filed, the Court assumes the correctness of the magistrate judge's factual findings and adopts them in full. <u>See</u> <u>Campbell</u>, 501 F.2d at 206.

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as reasonable to support a conclusion." <u>Id.</u> The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006) (quoting <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

## DISCUSSION

**A.** **Whether the ALJ Erred in its Consideration of Plaintiff's Mental Impairments**

Plaintiff argues the ALJ failed to properly consider the severity of Plaintiff's mental impairments at step two of the five-step sequential evaluation process. (<u>See</u> ECF No. 11, at 8-10.)

A step two analysis of the five-step sequential process requires the ALJ to determine whether an impairment is severe or not severe. (<u>See</u> 20 C.F.R. § 416.920(a).) An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. (<u>See</u> 20 C.F.R. § 416.920(c).) Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, and lifting. (<u>See</u> 20 C.F.R. §§ 404.1521, 416.921.) To satisfy

step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. (See 20 C.F.R. §§ 404.1508, 416.908.)

This step two analysis entails: "determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then if any of the mental impairments is severe, proceeding to step three of the sequential evaluation process." (See 20 C.F.R. § 416.920a(b)-(d); see also Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).) In rating the degree of limitation, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. (See 20 C.F.R. § 416.920a(c)(4).) As indicated by the ALJ, under the Commissioner's regulations, if the degrees of limitation are rated as "non" or "mild", the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." (See 20 C.F.R. § 416.920a(d)(1).)

Plaintiff contends that because Dr. Glassman, a consultative examiner, found some evidence of Plaintiff having depression and anxiety that Plaintiff would necessarily have some limitations in his ability to respond appropriately to usual work situations. (See ECF No.11, at 8-9; AR 757.) Such limitations, Plaintiff alleges, causes more than a "minimal of effect" on his ability to work, and should have been determined to be a "severe" impairment. (See ECF No. 11, at 10.) A finding of a "severe" impairment would enable the ALJ to move to the next step in the Social Security Administration's five-step process. See Edlund v. Massanari, 253 F. 3d 1152, 1160 (9th Cir. 2001).

Defendant argues that substantial evidence supports the ALJ's finding at step two that Plaintiff's mental limitations were no more than mild, and therefore non-severe. (See ECF No. 17, at 12.) Specifically, Defendant contends the purported severity of Plaintiff's mental impairments relies solely on the existence of a diagnosis and recitation of alleged

symptoms. (See ECF No. 8-10.) Such a diagnosis of impairments alone, however, is not sufficient to establish severity. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). Rather, an impairment must "*significantly* limit[] [Plaintiff's] physical or mental ability to do basic work activities" in order to qualify as severe. 20 C.F.R. § 416.920(c) (emphasis added). Ultimately, Dr. Glassman's assessment form concluded that Plaintiff "had no major mental status abnormalities" and that Plaintiff's degree of limitation in all the functional areas considered was either "none" or "mild." (See AR 756-58).

Consistent with the diagnosis reflected in Plaintiff's treatment records from FHC and in the psychiatric examination report of Dr. Glassman, the ALJ accepted that Plaintiff had medically-determinable mental impairments of depression, anxiety, and post-traumatic stress disorder. (See AR 19.) However, noting that there was little evidence in the file showing more significant limitations than what Dr. Glassman had noted in her examination, the ALJ correctly found that Plaintiff had shown no more than mild limitation in each of the four broad functional areas considered at step two of the five-step sequential evaluation process. (Id.) Specifically, Dr. Glassman indicated that Plaintiff "showed no major mental status abnormalities" and that Plaintiff's degree of limitation in all the functional areas considered was either "none" or "mild." (See AR 756-58.) Additionally, the FHC records merely indicate that Plaintiff sought treatment from a licensed social worker on four occasions, but these records are devoid of any evidence of specific functional limitations attributable to Plaintiff's mental impairments. (See AR 675-76, 677-81, 746-47, 748-52.) Finally, as indicated by the Magistrate Judge, in Plaintiff's hearing testimony regarding his work, Plaintiff never attributed his inability to hold a job to his mental impairment(s), only citing the pain and physical limitations caused by physical impairments. (See AR 39-46, 60). In accordance with the Commissioner's regulations, the ALJ properly concluded that Plaintiff's medically-determinable mental impairments were non-severe. (Id.)

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider the severity of plaintiff's mental impairments at step two.

**B.      Whether the ALJ Erred in its Consideration of the Opinions of Plaintiff's Treating Physicians and the State Agency Physicians**

Plaintiff also argues the ALJ failed to properly consider the opinions of Plaintiff's treating physician and the State agency physicians. (See ECF No. 11, at 10.) Specifically, Plaintiff first contends that the ALJ failed to properly consider the opinions of Plaintiff's treating physician at FHC. (See ECF No. 11, at 13-15 (citing AR 748-52).) The Ninth Circuit standard cited by Plaintiff indicates that failure to provide specific and legitimate reasons for rejecting the opinion of an examining doctor is reversible error. Crain v. Callahan, 996 F. Supp. 1003, 1014 (D. Or. 1997), citing Lester v. Chater, 81 F.3d 821, 831-832, 834 (9th Cir. 1995). However, as the Commissioner points out in her cross-motion, the FHC records identified by Plaintiff are those of social worker Yo Ishida, who was not a physician and whose opinions were not subject to the Ninth Circuit standard cited by Plaintiff. See 20 C.F.R. §§ 416.902, 416.913(a) & (d). As the Commissioner also points out, the FHC records identified by Plaintiff merely reflect Plaintiff's complaints to the FHC social worker Ishida, a mental examination of unremarkable results, and a diagnosis. (See ECF No. 22, at 9.) Not only do these records fail to reflect judgments about the nature or severity of Plaintiff's impairments, they do not contain any medical opinions. See 20 C.F.R. § 416.927(a)(1).

Plaintiff also argues the ALJ failed to properly consider the opinions of the State agency physicians that Plaintiff was limited to "sedentary" work. (See ECF No. 11, at 14; see also ECF No. 21, at 4-5.) As correctly explained by the Commissioner, the physicians did not render this opinion. Instead, Plaintiff has misattributed statements by the State agency disability examiners to the two State agency physicians. (See ECF No. 22, at 3-5.) The record shows that the first of two physicians, Dr. Ross, opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, and could stand/walk for 4 hours and sit for 6 hours in an 8-hour workday. (AR 97.) The second physician, Dr. Schnute, similarly found the same lifting/carrying and sitting restrictions, but opined that Plaintiff could stand/walk for 6 hours in an 8-hour workday. (AR 109.) Such limitations

are in fact consistent with light work, and greater than sedentary work. See 20 C.F.R. §§ 416.967(a), (b); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (a sedentary level of work should generally total no more than about 2 hours standing or walking of an 8-hour workday).

Plaintiff also argues the ALJ has not provided adequate reasons for rejecting or limiting the opinions of some of plaintiff's treating and examining physicians. However, this argument is contradicted by the record. (See ECF No.11, at 11.) In his decision, the ALJ explained the extent to which he relied on and/or discounted the opinions of Dr. Ross and Dr. Schnute and his reasons for doing so. (See AR 21-22). First, the ALJ noted that Dr. Ross and the Medical Examiner shared the same opinions that Plaintiff had the capacity for light lifting and carrying, but was also limited to standing and walking only 4 hours in a normal workday. (Id. at 22.) Additionally, Dr. Schnute and Dr. Sabourin, both orthopedic consultative examiners, shared the opinion that Plaintiff had the capacity for light work. (Id. at 22.) While the opinions from Dr. Schnute and Dr. Sabourin were also "generally supportive of the capacity for a range of light work," the ALJ was only giving "partial weight" to their opinions. (Id.) Where the ALJ gave "more weight" to the opinions of Dr. Ross and the Medical Examiner, it was in recognition of Plaintiff's "need for additional standing and walking restrictions." (Id.)

Moreover, in considering whether the ALJ erred in its consideration of the opinions of Plaintiff's treating physicians, the Magistrate Judge determined the ALJ did not err. As pointed out by the Magistrate Judge, it was not an error for the ALJ to disregard the FHC records because the records did not indicate any medical opinions, reflect judgments about the nature or severity of Plaintiff's impairments, or indicate what Plaintiff can still do despite his impairments. (See 20 C.F.R. § 416.927(a)(1).) Further, the Magistrate Judge correctly indicated that the ALJ properly considered the assessment of the State agency physicians, who determined that Plaintiff had sitting/lifting/carrying restrictions, but that such restrictions would not limit Plaintiff to sedentary work. Finally, the Magistrate Judge determined the ALJ properly explained the extent to which he relied

on and/or discounted the opinions of Plaintiff's examining physicians, which ultimately gave more weight to the physician recognizing additional work restrictions in favor of Plaintiff.

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of the State agency physicians.

## CONCLUSION

Based on the above, the Court **ADOPTS** the Report in full and **GRANTS** Defendant's cross-motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment and **AFFIRMS** the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

Dated:  February 28, 2019

Hon. Gonzalo P. Curiel
United States District Judge